UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE, a minor by and through her Guardian VALERIE BOYD<br>　　　Plaintiff,<br><br>v.<br><br>OFFICER JOSHUA SMERECZYNSKY, ET. AL.<br>　　　Defendants. | No. 3:16-cv-394 (MPS) |

**Ruling on Motion to Dismiss**

**I.　Introduction**

This action arises from an arrest of Plaintiff Jane Doe by Defendant Joshua Smereczynsky, a New Haven Police officer.  Smereczynsky allegedly used excessive force during Jane Doe's arrest.  By and through her guardian, Valerie Boyd, Jane Doe sues Smereczynsky, the City of New Haven, and Dean Esserman (the New Haven Police Chief). Smereczynsky and Esserman are sued in both their individual and official capacities.  Jane Doe asserts violations of the federal constitution and state law.

Defendants City of New Haven and Smereczynsky have moved to dismiss Plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(6).  As more fully explained below, I grant the motion to dismiss because (i) Plaintiff fails to allege a plausible *Monell* claim and thus her claims against New Haven and Esserman in his official capacity fail, (ii) Plaintiff fails to allege a plausible claim that Esserman was personally involved in the alleged constitutional violation and thus her claim against him in his individual capacity fails, (iii) governmental immunity bars Plaintiff's state law claim against New Haven and Esserman in his official capacity, and (iv) Plaintiff has failed to allege a plausible state law claim against Esserman in his individual capacity.

1

## II. The Amended Complaint

Plaintiff makes the following factual allegations, which the Court assumes to be true.

### A. Smereczynsky Allegations

On March 15, 2015, at approximately 2:42 pm, Officer Smereczynsky responded to a call for service at Buffalo Wild Wings on Church Street in New Haven. (ECF No. 22 at ¶ 8.) Mr. Denardis, the Buffalo Wild Wings Manager, met Smereczynsky when he arrived. (*Id.* at ¶ 9.) Mr. Denardis informed Smereczynsky that three young girls (one of whom was the plaintiff), who were seated in the waiting area, "had been involved in a minor skirmish inside the restaurant." (*Id.* at ¶ 9.) Smereczynsky began questioning one of the girls (not the plaintiff) about the incident. (*Id.* at ¶ 11.) As Smereczynsky was "interrogat[ing] one of the other girls about the incident", Mr. Denardis interrupted Smereczynsky's questioning and "pointed at Jane Doe, saying she had maced us." (*Id.* at ¶¶ 11-12.) Smereczynsky "immediately ordered Jane Doe to stand and remove her hand from her jacket pocket." (*Id.* at ¶ 13.) "Before Jane Doe could comply, Defendant Smerecyznsky lunged at her pocketed hand." (*Id.* at ¶ 14.) "Jane Doe asked Defendant Smerecyznsky not to touch her." (*Id.* at ¶ 15.) But Smereczynsky grabbed Jane Doe's left wrist and handcuffed her with the assistance of a restaurant security guard. (*Id.* at ¶¶ 16-17.)

After handcuffing Jane Doe, Smereczynsky escorted her out of the restaurant onto the street, claiming that she had been attempting to escape. (*Id.* at ¶ 18.) He dragged her onto the street and pinned her against a parked sport utility vehicle while her hands remained behind her back. (*Id.* at ¶ 20.) Once he had her pinned, Smerecyznsky allegedly saw the handle of a knife protruding from her purse. (*Id.* at ¶ 22.) He then threw plaintiff onto the sidewalk, "slamming her face onto the sidewalk curb." (*Id.* at ¶ 23.) Smereczynsky then recovered a "small kitchen

2

knife from Jane Doe's purse." (*Id*. at ¶ 24.)  Plaintiff also alleges "[u]pon information and belief," that Smereczynsky did not actually see the knife before he forced her to the ground, and that the knife was inside a zipped inner pocket in her pursue.  (*Id*. at ¶¶ 25-26.)  "Upon retrieving the small knife from inside Jane Doe's purse, Defendant Smereczynsky and two other officers yanked her up off of the ground and escorted her to a parked patrol vehicle.  She was taken to Police headquarters at Union Avenue," where Smereczynsky failed to offer her medical attention even after she complained to him that her face hurt.  (*Id*. at ¶¶ 27, 29, 31.)

### B. New Haven and Chief Esserman Allegations

Jane Doe claims that "Defendants New Haven and Esserman, failed to adequately investigate the incident and failed to amend the unwritten policies of excessive force practiced by the police department and its officers."  (*Id*. at ¶ 36.)  Furthermore, "Defendants New Haven and Essermen were on notice that officer training, specifically in the proper uses of force to be used while executing arrests, was deficient due to a pattern of similar constitutional violations being established in prior lawsuits and excessive force complaints."  (*Id*. at ¶ 38.)  In particular, Jane Doe asserts that "more than 34 civil lawsuits, notices of intent to sue, and or human rights violations complaints against officers for using excessive force were filed from 2008 to the date of the incident" and "more than 218 department excessive force complaints were received by the Internal Affairs Division" during the same period.  (*Id*. at ¶¶ 39-40.)  Jane Doe asserts that "Defendants New Haven and Esserman failed to take any meaningful corrective action, against the unwritten policy and culture of excessive force, and thereby demonstrated a continued adherence to an approach, to wit: training, known to fail to curb the tortious and unconstitutional conduct practiced by officers.  Such failure of Defendants New Haven and Esserman demonstrated a deliberate indifference to the rights of others."  (*Id*. at ¶ 42.)  Furthermore,

"Defendants New Haven and Esserman's failure to implement adequate training policies and to quash the unwritten policy of pervasive excessive force was a cause of the plaintiff's rights being violated; such failure being tantamount to a constitutional violation itself." (*Id*. at ¶ 43.)

### C. Legal Claims

Invoking 42 U.S.C. § 1983 and state law, Plaintiff claims "[a]s a result of individual malicious acts; a failure to properly train; an adherence to unwritten policies of excessive force and inaction, and deliberate indifference the Defendants subjected the Plaintiff to:

> [a]n unreasonable [s]earch and [s]eizure and false arrest, and used [u]nreasonable [f]orce in the context thereof, violating the [P]laintiff's civil rights as guaranteed under the Fourth Amendment of the United States Constitution;
>
> [c]onduct that deprived the Plaintiff of her liberty to pursue her occupation as guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution;
>
> [c]onduct that violated the Plaintiff's right to equal protection of the laws as guaranteed under the Fourteenth Amendment of the United States Constitution; and
>
> [i]ntentional humiliation and infliction of emotional distress, in violation of the laws of the State of Connecticut."

(ECF No. 22 at ¶ 2.)

### III.  Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), a court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A court may allow a case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554-55).

4

## IV. Discussion

Plaintiff brings both section 1983 and state law claims against New Haven and Esserman. I analyze each in turn.

### A. Section 1983 Claims

*1. Claims Against City of New Haven and Esserman in His Official Capacity*

Because a claim against a municipal employee in his official capacity is treated as a claim against the municipality itself, I will analyze together the claims against New Haven and Esserman in his official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). A municipality is liable under § 1983 only if it had a "policy or custom" that caused the plaintiff's injury. *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)("To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (internal quotation marks and citations omitted)). Courts have recognized that "[a] plaintiff may satisfy the policy or custom prong in one of four ways: by alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Aquino v. City of N.Y.*, No. 1:16-CV-1577, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017)(internal quotation marks and citation omitted); *see also Albert v. City of Hartford*, 529 F. Supp. 2d 311, 329 (D. Conn. 2007). Plaintiff does not allege that that the alleged

unconstitutional conduct was pursuant to a formal policy or that New Haven policymakers caused the violation of her rights.[1]  Therefore, I examine whether the amended complaint alleges facts suggesting a "custom" or "failure to train."

      a.    Custom

Plaintiff's first theory of municipal liability is based on "a pattern of similar constitutional violations being established in prior lawsuits and departmental excessive force complaints" (ECF No. 22 at ¶ 38), which gave rise to an "unwritten policy of pervasive excessive force [,which] was a cause of the plaintiff's rights being violated such failure being tantamount to a constitutional violation itself."  (*Id.* at ¶ 43.)

"A Section 1983 action may be maintained based on a practice that was so persistent or widespread as to constitute a custom or usage with the force of law.  The alleged custom or practice need not be embodied in a rule or regulation.  However, the alleged practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials."  *Green v. City of N.Y.*, 465 F.3d 65, 80 (2d Cir. 2006)(internal quotation marks and citations omitted).  "*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."  *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  "So long as the discriminatory practices of city officials are persistent and widespread, they could be so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability."  *Sorlucco v. New York*

---

[1] Although it might be possible to treat Plaintiff's individual capacity claim against Esserman for supervisory liability as a claim alleging action by a final municipal policymaker, doing so would not affect the outcome.  As discussed below, Plaintiff's individual capacity claim against Esserman fails in any event.

*City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)(internal quotation marks and citation omitted).

Plaintiff has not plausibly alleged the existence of a "custom or usage" pursuant to which New Haven police officers used an "unwritten policy of and culture of excessive force" that caused a violation of her constitutional rights.  Plaintiff attempts to show a custom by relying on allegations of "a pattern of similar constitutional violations being established in prior lawsuits and departmental excessive for complaints."  (ECF No. 22 at ¶ 38.)  Plaintiff alleges that between 2008 and March 17, 2015 there were "more than 34 civil lawsuits, notices of intent to sue, and or human rights violations complaints against officers for using excessive force" and "more than 218 departmental excessive force complaints were received by Internal Affairs Division."  (*Id*. at ¶¶ 39-40.)  But merely alleging that suits and complaints were filed – without more – is insufficient to support a claim of "a pattern of similar constitutional *violations*."  *See e.g.*, *Walker v. City of N.Y.*, No. 14-CV-808, 2015 WL 4254026, at *8 (S.D.N.Y. July 14, 2015)(finding plaintiff had failed to allege a "custom by merely listing the names of numerous lawsuits, without indicating whether they resulted in a finding of liability against the Officers or the City or providing any specific details about the cases"); *Jones v. City of N.Y.,* No. 13-CV-929, 2016 WL 1322443, at *8 (S.D.N.Y. Mar. 31, 2016)("A list of cases may only support an allegation of widespread practice when they are combined with anecdotal evidence and other factual allegations of the alleged policy or custom.")(citing cases); *Walker v. City of New York*, No. 12 CIV. 5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014)(holding that the "number of complaints (none resulting in an adjudication of liability), spread over a [ten-year] period…in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"); *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir.

7

1985)(holding that, even pre-*Twombly* and *Iqbal*, allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed without more, indicates nothing, as people may file a complaint for many reasons, or for no reason at all"). Furthermore, Plaintiff makes no allegations – other than conclusory ones – that the "[civil suits and complaints] w[ere] factually similar to the present case; that any of the complaints were substantiated or even advanced past the notice-of-claim stage; or that any of them can be plausibly connected to the alleged deprivation of the Plaintiff's constitutional right in this case." *Stratakos v. Nassau Cty.*, No. 15-cv-724, 2016 WL 6902143, at *5 (E.D.N.Y. Nov. 23, 2016); *see also Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 543 (S.D.N.Y. 2015)("The mere assertion that there are other cases pending that allege the same facts is conclusory, and therefore must be disregarded.")(internal quotation marks and citation omitted)*; Woodhouse v. City of Mount Vernon*, No. 113-cv-00189, 2016 WL 354896, at *7 (S.D.N.Y. Jan. 27, 2016)("Woodhouse's complaint is silent as to the allegations contained in these lawsuits, the timeframe of them, the outcome, the people involved..."); *Collins v. City of New York*, 923 F .Supp. 2d 462, 479 (E.D.N.Y. 2013)(finding the plaintiff's reference to a "litany of other police-misconduct cases" to be insufficient to plausibly allege *Monell* liability because those cases were based on, among other things, "something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct").

Plaintiff's reliance on *Goode v. Newton*, 2013 WL 1087549 (D. Conn. Mar. 14, 2013), is misplaced. In *Goode*, after "recogniz[ing]" that the adequacy of the allegations supporting the *Monell* claim "present[ed] a close question," Judge Arterton denied the City of New London's motion to dismiss where the plaintiff made specific allegations that the police were falsifying police reports to support arrests – including two incidents involving the same defendants and the

same plaintiff that spanned a mere six months.  2013 WL 1087549 at * 8.  Further, although the Court also relied on allegations in two other pending lawsuits against the City of New London, those allegations were set forth with specificity and bore a substantial resemblance to the allegations about the two incidents made by the *Goode* plaintiff.  *See id*. ("The continued practice of falsifying reports in 2010" referred to "two separate occasions when [the] Defendants violated [plaintiff's] civil rights, one on April 29, 2010 and the other on October 20, 2010."  And the "prior allegations of falsifying reports in 2009" were particularized "allegations that New London policemen falsified police reports and manufactured criminal charges in 2009.").  That level of specificity is absent here, and the Plaintiff in this case makes no effort to allege similarity between the other pending cases and complaints of excessive force and what happened to the Plaintiff.  Finally, Judge Arterton also relied on the "small size" of the 80-officer New London police force; by contrast, here Plaintiff alleges that the New Haven Police Department has 440 members.  (ECF No. 22 at ¶ 7); 2013 WL 1087549 at *8.  In short, *Goode* does not support the Plaintiff's argument that she has pled a plausible *Monell* claim.

Plaintiff has not plausibly alleged the existence of a "custom or usage" under which New Haven police officers used an "unwritten policy of and culture of excessive force."

        b.    <u>Failure to Train</u>

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  For municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Id.* (internal quotation marks and citation omitted.)  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to

demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks and citation omitted). "While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms v. City of New York*, 480 F.App'x 627 (2d Cir. 2012).

To allege deliberate indifference in the context of failure to train claim, a plaintiff must plead facts giving rise to a plausible inference (1) "that a policymaker knows to a moral certainty that h[is] employees will confront a given situation"; (2) "the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

Plaintiff alleges that "officer training, specifically in the proper uses of force to be used while executing arrests, was deficient." (ECF No. 22 at ¶ 38.) But she does not allege any specific deficiency in New Haven's police officer training regimen that caused her injuries, a fatal gap. *Connick*, 563 U.S. at 61 ("[W]hen city policymakers are on actual or constructive notice that a *particular omission* in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.")(emphasis added); *Marte v. N.Y. City Police Dep't*, No. 10 CIV. 3706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010)("While plaintiffs allege that the NYPD and Task Force are responsible for training and supervision of its officers, they have not pled any facts that plausibly allege a specific deficiency in the training or supervision program that accounts for deprivation of their constitutional rights."); *Walker v. City of N.Y.*, No.

14-CV-808, 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015)("Plaintiff has also failed to plead any facts that suggest a failure to train the Officers caused his constitutional violation. He neither cites to procedural manuals and training guides, nor highlights the pertinent aspects of police training in order to prove the claim."); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012)(dismissing a *Monell* failure to train claim where the plaintiff "merely alleged that the [t]own fail[ed] to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train"); *Khanukayev v. City of New York,* No. 09–CV–6175, 2012 WL 3538729, at *4 (S.D.N.Y. Aug.13, 2012)(dismissing a failure to train claim where "the complaint [does not] ... allege ... the manner in which there was a failure to train"); *Doe v. City of New York,* No. 09–CV–9895, 2012 WL 2900483, at *2 (S.D.N.Y. July 2, 2012)("The [a]mended [c]omplaint contains no facts elaborating on (or even theorizing as to) the defective nature of the NYPD training program, let alone an allegation as to how a defect in training or supervision caused her harm.").

Plaintiff also does not plead any facts tending to show that the alleged failure to train amounted to deliberate indifference to the constitutional rights of people who may find themselves in her situation.  Instead, Plaintiff alleges in conclusory fashion that "Defendants New Haven and Esserman failed to take any meaningful corrective action, against the unwritten policy and culture of excessive force, and thereby demonstrated a continued adherence to an approach, to wit: training, known to fail to curb the tortious and unconstitutional conduct practiced by officers.  Such failure of Defendants New Haven and Esserman demonstrated a deliberate indifference to the rights of others."  (*Id*. at ¶ 42.)  Furthermore, Plaintiff's allegation that "Defendant Smereczysnsky indicated, to the media, that he was trained to use the conduct he

11

did in fact use when apprehending the minor plaintiff" does not save Plaintiff's claim.  (*Id*. at ¶ 37.)  That allegation standing alone is not enough to infer that Plaintiff's complained of violation was a result of a "particular omission in [the City's] training program," *Connick*, 563 U.S. at 61, let alone that other similar constitutional violations resulted from such an omission.  *See id*. at 62 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary  to demonstrate deliberate indifference for purposes of a failure to train claim."), *Worrell v. City of N.Y.*, No. 12-CV-6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014)("In light of Plaintiff's failure to allege instances of alleged unconstitutional activity other than the Defendants' single actions in her case, Plaintiff failed to demonstrate deliberate indifference for purposes of a municipal liability failure to train claim.").  And as shown above, Plaintiff's allegations about other filed lawsuits and complaints are insufficient to set forth a "pattern of similar constitutional *violations*."  *Connick*, 563 U.S. at 62 (emphasis added).

Plaintiff's remaining allegation concerning failure to train is conclusory.  (ECF No. at ¶ 43)("Defendants New Haven and Esserman's failure to implement adequate training policies to quash the unwritten policy of pervasive excessive force was a cause of the plaintiff's rights being violated; such failure being tantamount to a constitutional violation itself."); *see Santos v. New York City,* 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012)("[T]he existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff.").

In sum, Plaintiff has not plausibly alleged a failure to train claim.

### 2. *Claim Against Esserman for Supervisory Liability*

"An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority." *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)(internal quotation marks and citations omitted). Instead, supervisory liability may be established by the following factors articulated in *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference...by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (internal quotation marks and citation omitted).

Plaintiff has failed to allege facts suggesting that Esserman was personally involved in the alleged constitutional violation. There are no allegations that Esserman directly participated in the alleged constitutional violation or that he was informed of a specific complaint through a report or appeal and failed to remedy the wrong. To be sure, the amended complaint alleges "Esserman [was] on notice that officer training, specifically in the proper uses of force to be used while executing arrests, was deficient due to a pattern of similar constitutional violations [] established in prior lawsuits and departmental excessive force complaints." (ECF No. 22 at ¶ 38.) But just as a mere allegation that there were other complaints or lawsuits concerning excessive force is not enough to sustain a *Monell* claim, it is not enough to sustain a supervisory liability claim. Plaintiff does not allege that any of these lawsuits or complaints resulted in findings of a constitutional violation, that any of them involved conduct similar to Officer Smereczysnky's conduct or, most importantly for purposes of the claim of supervisory liability,

13

that any of them complained of conduct by Officer Smereczysnky. In any event, even if Esserman was on "notice" of the lawsuits and complaints, such allegations are insufficient to state a claim for personal involvement. *See e.g.*, *McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 103 (E.D.N.Y. 2016)("[N]otice of unconstitutional conduct is not alone sufficient to establish the Supervisory Defendants' personal involvement…"); *Johnson v. Wright,* 234 F. Supp. 2d 352, 364 (S.D.N.Y. 2002)("Mere awareness of a constitutional violation, however, is insufficient to impose liability."). Plaintiff also does not allege facts showing that Esserman was grossly negligent in supervising Smereczysnky, i.e., that he was "aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent future misconduct before the plaintiff was eventually injured." *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014)(internal quotation marks and citation omitted).

## B. State Law Claim

Plaintiff asserts a claim of intentional infliction of emotional distress against New Haven and Esserman. I consider this claim against them in their official and individual capacities, respectively.

### 1. *Claim Against New Haven and Esserman in His Official Capacity*

Under Connecticut law, "a municipality may not be held liable for the intentional acts of its employees...including intentional infliction of emotional distress." *Martin v. Westport,* 108 Conn. App. 710, 730 (2008).[2] Because the amended complaint alleges that the Plaintiff was

---

[2] Connecticut has codified the doctrine of governmental immunity in Conn. Gen. Stat. § 52-557n. Section 52-557n provides in relevant part: "[e]xcept as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct...." General Statutes § 52–577n.

injured due to intentional acts by Officer Smereczysnky, I must dismiss Plaintiff's intentional infliction of emotional distress claim against New Haven.  Plaintiff's intentional infliction of emotional distress claim against Esserman in his official capacity fails for the same reason.  *Kelly v. City of New Haven*, 275 Conn. 580, 595 (2005)("It is well settled law that an action against a government official in his or her official capacity is not an action against the official, but, instead, is one against the official's office and, thus, is treated as an action against the entity itself.").

### 2.   *Claim Against Essermen in His Individual Capacity*

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 443 (2003)(internal quotation marks and citation omitted).  "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." *Id*. (internal quotation marks and citation omitted).

The amended complaint does not allege facts suggesting Esserman's conduct was extreme and outrageous.  Indeed, the amended complaint's allegations as to Esserman are mostly conclusory.  *See* (ECF No. 22 at ¶ 36)("Esserman failed to adequately investigate the incident and failed to amend the unwritten policies and patterns of excessive force practiced by the police department and its officers."); (*Id*. at ¶ 43)("Esserman's failure to implement adequate training policies and to quash the unwritten policy of pervasive excessive force was a cause of the plaintiff's rights being violated…"); (*Id*. at ¶ 44)("The Defendants' conduct, acts,

omissions…was [sic] excessive, extreme and so outside the bounds of socially accepted norms that the Defendants should have known their conduct was likely to cause distress to the minor plaintiff."). And Plaintiff's allegations that Esserman was "on notice" of other lawsuits and complaints alleging excessive force – without more – does not come close to alleging facts comprising a plausible claim of intentional infliction of emotional distress. Plaintiff has alleged no facts suggesting Esserman's "conduct [was] so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Carrol*, 262 Conn. at 443. Therefore, I dismiss the intentional infliction of emotional distress claim against Essermen in his individual capacity.

## V. Conclusion

For the reasons set forth above, I GRANT New Haven's and Esserman's motion to dismiss. As all the claims against New Haven and Esserman have been dismissed, the Clerk is directed to terminate New Haven and Esserman from the case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             March 23, 2017