UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE, a minor by and through her Guardian VALERIE BOYD<br>    Plaintiff,<br><br>v.<br><br>OFFICER JOSHUA OFFICER SMERECZYNSKY, ET AL.<br>    Defendants. | No. 3:16-cv-00394 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

This action arises from an arrest of Plaintiff Jane Doe by Defendant Joshua Officer Smereczynsky, a New Haven Police officer. Officer Smereczynsky allegedly used excessive force during Jane Doe's arrest. By and through her guardian, Valerie Boyd, Jane Doe sues Officer Smereczynsky, the City of New Haven, and Dean Esserman (the New Haven Police Chief). In my ruling on the defendants' motion to dismiss, I dismissed the claims against the latter two parties. (*See* ECF No. 44 at 16.) That leaves Ms. Doe's claims against defendant Officer Smereczynsky, which consist of the following: (i) unreasonable search and seizure in violation of the Fourth Amendment; (ii) false arrest in violation of the Fourth Amendment; (iii) use of unreasonable force in violation of the Fourth Amendment; (iv) deprivation of liberty to pursue her occupation in violation of the Fifth and Fourteenth Amendments; (v) violation of the Ms. Doe's right to equal protection under the Fourteenth Amendment; and (vi) intentional infliction of emotional distress in violation of Connecticut law. Now before me is Officer Smereczynsky's motion for summary judgment. (ECF No. 53.) For the reasons that follow, the motion is granted in part and denied in part. The motion is denied with respect to Ms. Doe's

1

excessive force and intentional infliction of emotional distress claims. It is granted with respect to all of Ms. Doe's other claims.

## II. Background

### A. Factual Background

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated. Jane Doe "had a history of physical altercations and confrontations with Sabrina Parker." (ECF No. 53-2, Officer Smereczynsky's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") at ¶ 1; ECF No. 56-9, Jane Doe's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 Stmt.") at ¶ 1.) "On March 15, 2015, the day of the New Haven St. Patrick's Day parade, Jane Doe carried a kitchen knife with her for personal protection." (Def.'s L.R. 56(a)1 Stmt. at ¶ 2; Pl.'s L.R. 56(a)2 Stmt. at ¶ 2.) "While at the parade, Jane Doe saw Ms. Parker across the street, and she went into Buffalo Wild Wings along with her sister, Sister Doe, in order to avoid a confrontation." (Def.'s L.R. 56(a)1 Stmt. at ¶ 3; Pl.'s L.R. 56(a)2 Stmt. at ¶ 3.) Despite Jane Doe's efforts, "Ms. Parker and a group of her friends followed Jane Doe into the Buffalo Wild Wings" and "Ms. Parker and Sister Doe started fighting." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 4-5; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 4-5.)

"At some point during the altercation between Ms. Parker and Sister Doe, someone sprayed mace." (Def.'s L.R. 56(a)1 Stmt. at ¶ 8; Pl.'s L.R. 56(a)2 Stmt. at ¶ 8.) Eventually, "[t]he employees of Buffalo Wild Wings broke up the fight between Ms. Parker and Sister Doe," and "Ms. Parker and her friends left immediately after the fight . . . ended." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 9-10; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 9-10.) "Someone had called 9-1-1- during the fight" and "[o]fficers from the New Haven Police Department," including Officer Smereczynsky, "arrived shortly after the fight had ended." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 11-12

2

(internal citations omitted); Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 11-12.) "Buffalo Wild Wings employees reported to Officer Smereczynsky that Jane Doe had sprayed them with mace." (Def.'s L.R. 56(a)1 Stmt. at ¶ 13; Pl.'s L.R. 56(a)2 Stmt. at ¶ 13.)

"Officer Smereczynsky ordered Jane Doe to take her hands out of her pockets, based on the Buffalo Wild Wings employees' statement that [she] had sprayed them with mace." (Def.'s L.R. 56(a)1 Stmt. at ¶ 14; Pl.'s L.R. 56(a)2 Stmt. at ¶ 14.) "Jane Doe did not comply and did not verbally respond to Officer Smereczynsky's request." (Def.'s L.R. 56(a)1 Stmt. at ¶ 15; Pl.'s L.R. 56(a)2 Stmt. at ¶ 15.) "Officer Smereczynsky [then] proceeded to handcuff and arrest Jane Doe" "based on probable cause to believe that she had committed an assault by spraying people with mace." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 16-17; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 16-17.) "During the handcuffing, Jane Doe struggled with and resisted Officer Smereczynsky to the point where a Buffalo Wild Wings employee had to assist." (Def.'s L.R. 56(a)1 Stmt. at ¶ 18; Pl.'s L.R. 56(a)2 Stmt. at ¶ 18.) After Ms. Doe was handcuffed, Officer Smereczynsky walked her outside. (Def.'s L.R. 56(a)1 Stmt. at ¶ 19; Pl.'s L.R. 56(a)2 Stmt. at ¶ 19.) Officer Smereczynsky contends that Jane Doe "continued to struggle and resist" during this period, but Jane Doe denies this allegation. (Def.'s L.R. 56(a)1 Stmt. at ¶ 20; Pl.'s L.R. 56(a)2 Stmt. at ¶ 20.)

Once he had walked Jane Doe outside, "Officer Smereczynsky pressed Jane Doe against a parked SUV in order to try to gain control over her." (Def.'s L.R. 56(a)1 Stmt. at ¶ 21; Pl.'s L.R. 56(a)2 Stmt. at ¶ 21.) "At that time, Officer Smereczynsky observed the knife handle sticking out of Jane Doe's purse, which was open at the time." (Def.'s L.R. 56(a)1 Stmt. at ¶ 22; Pl.'s L.R. 56(a)2 Stmt. at ¶ 22.) "[T]he purse containing the knife was hanging in the middle of Jane Doe's back, near her hands." (Def.'s L.R. 56(a)1 Stmt. at ¶ 24; Pl.'s L.R. 56(a)2 Stmt. at ¶ 24.) Officer Smereczynsky contends that there were no other officers in the immediate area at

that time and that Jane Doe was still struggling and resisting; Ms. Doe denies these allegations. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 25-26; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 25-26.)

"Upon seeing the knife, Officer Smereczynsky immediately radioed for assistance from other officers and grabbed the knife and the purse." (Def.'s L.R. 56(a)1 Stmt. at ¶ 27; Pl.'s L.R. 56(a)2 Stmt. at ¶ 27.) He then "used a takedown maneuver to bring Jane Doe to the ground." (Def.'s L.R. 56(a)1 Stmt. at ¶ 28; Pl.'s L.R. 56(a)2 Stmt. at ¶ 28.) "Several seconds later, other officers arrived to assist with Officer Smereczynsky's restraint of Jane Doe." (Def.'s L.R. 56(a)1 Stmt. at ¶ 29; Pl.'s L.R. 56(a)2 Stmt. at ¶ 29.) "Officer Smereczynsky did not observe any injuries on Jane Doe subsequent to the takedown" and she "did not inform Officer Smereczynsky that she had sustained any injuries prior to being brought to the Juvenile Processing room." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 31-32; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 31-32.) "Jane Doe was subsequently charged with assault third degree, breach of peace second degree, possession or carrying a dangerous weapon, and interfering with police." (Def.'s L.R. 56(a)1 Stmt. at ¶ ; Pl.'s L.R. 56(a)2 Stmt. at ¶ 2.)

### B. Jane Doe's Complaint

Jane Doe subsequently filed suit against Officer Smereczynsky, New Haven Police Chief Dean Esserman, various unidentified officers, and the City of New Haven. (*See* ECF No. 22 ("Complaint") at ¶¶ 1-2.) She alleged claims of "unreasonable search and seizure," "false arrest," and "unreasonable force in the course thereof" in violation of the Fourth Amendment. (*See id.* at ¶ 2(a).) She also claimed that the defendants' conduct "deprived [her] of her liberty to pursue her occupation as guaranteed under the Fifth and Fourteenth Amendments . . . ." (*See id.* at ¶ 2(b).) Further, she claimed that the defendants' conduct violated her right to equal protection under the Fourteenth Amendment. (*See id.* at ¶ 2(c).) Finally, she alleged a claim of

"intentional humiliation and infliction of emotional distress" in violation of Connecticut law. (*See id.* at ¶ 2(d).) As noted above, I dismissed the claims against the City of New Haven and Chief Esserman. (*See* ECF No. 44 at 16.) Since Ms. Doe did not identify any other officer defendants, her only claims remaining are those against Officer Smereczynsky.

## III. Standard of Review

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (internal quotation marks omitted). "A fact is material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . . , and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

## IV. Discussion

### A. Unreasonable Search and Seizure/False Arrest Claim

The Fourth Amendment "prohibits unreasonable seizures in the form of arrests without probable cause."[1] *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 475 (E.D.N.Y. 2016); *see*

---

[1] I address the plaintiff's unreasonable seizure and false arrest claims together because, as the language quoted from *Frederique* demonstrates, they are effectively the same claim. This conclusion is further supported by the plaintiff's use of the same argument to defend each of these claims—i.e., that Officer Smereczynsky lacked probable cause to arrest her. (*See* ECF No. 46-8 at 3-6.)

5

*also Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir.2006) ("[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause."). "To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant v. Okst.*, 101 F.3d 845, 852 (2d Cir. 1996)). A showing of probable cause will defeat a claim for false arrest. *See id.*

"In analyzing § 1983 claims for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (quoting *Weyant*, 101 F.3d at 852). Under Connecticut law, a plaintiff advancing a false arrest claim bears the burden of proving the absence of probable cause. *See Pearson v. Lorancaitis*, No. 3:09CV1641 VLB, 2012 WL 162355, at *3 (D. Conn. Jan. 19, 2012) ("Connecticut law places the burden on the false arrest plaintiff to prove the absence of probable cause."). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera*, 361 F.at 743 (internal quotation marks omitted). Further, "a claim for probable cause turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Pearson*, 2012 WL 162355 at *4 (quoting *Jaegly*, 439 F.3d at 154). Since Officer Smereczynsky has also alleged that he is entitled to qualified immunity on this claim (*see* ECF No. 53 at 17), he "need only show 'arguable' probable cause" to defeat Ms. Doe's claims. *See Martinez v. Simonetti*, 202

6

F.3d 625, 634 (2d Cir. 2000) (quoting *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997)). "Whether probable cause existed is a question that may be resolved as a matter of law on a motion for summary judgment if there is no dispute with regard to the pertinent events and knowledge of the officer." *Winstock v. Wilk*, 296 F. Supp. 2d 241, 256 (D. Conn. 2003) (citing *Weyant*, 101 F.3d at 852.)

Ms. Doe contends that her arrest was not supported by probable cause based upon the circumstances known to Officer Smereczynsky at the time. (*See* ECF No. 36-8 at 4-5.) The parties do not materially dispute those circumstances. As noted above, they agree that Officer Smereczynsky arrived on the scene after someone called 9-1-1 during the fight between Ms. Parker and Sister Doe. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 11-12 (internal citations omitted); Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 11-12.) They also agree that "Buffalo Wild Wings employees reported to Officer Smereczynsky that Jane Doe had sprayed them with mace." (Def.'s L.R. 56(a)1 Stmt. at ¶ 13; Pl.'s L.R. 56(a)2 Stmt. at ¶ 13.) Finally, they agree that Officer Smereczynsky ordered Ms. Doe to take her hands out of her pockets after hearing this accusation, that she did not acknowledge his request, and that he subsequently arrested her "based on probable cause to believe that she had committed an assault by spraying people with mace." (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 14-17; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 14-17.)

These undisputed facts demonstrate that Officer Smereczynsky had "knowledge or reasonably trustworthy information of facts and circumstances . . . sufficient to warrant a person of reasonable caution in the belief that the person to be arrested ha[d] . . . commit[ed] a crime." *Escalera*, 361 F.at 743 (internal quotation marks omitted). Ms. Doe does not contend that it would be consonant with Connecticut law for her to spray people with mace. *See also* Conn. Gen. Stat. § 53a-61(a) ("A person is guilty of assault in the third degree when: (1) With intent to

cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.").

The inquiry at the heart of this matter, then, is whether Officer Smereczynsky had "reasonably trustworthy information" demonstrating probable cause to suspect Ms. Doe had sprayed the employees with mace. For the reasons that follow, I conclude that he did. The Second Circuit has concluded that the allegations of victims at the scene of a crime establish probable cause unless there is reason to doubt the veracity of the accusers. *See Martinez*, 202 F.3d at 634 ("[It] is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." (quoting *Miloslavsky v. AES Eng'g Soc'y*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992)); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (internal citation omitted)).

Ms. Doe has failed to point to any such reason. The Buffalo Wild Wings employees who accused Ms. Doe of spraying mace at them were Raymond Denardis—a manager at the restaurant—and another employee named Tre Tavaris. (*See* ECF No. 53, Ex. C, Deposition of Raymond Denardis ("Denardis Depo.") at 20 (noting that Denardis and Tavaris pointed to Ms. Doe when an officer asked who had sprayed the mace).) Ms. Doe contends that "[n]o officer could smell mace or see any indication that mace had been sprayed in the Buffalo Wild Wings restaurant." (*See* ECF No. 56-8 at 4-5.) This contention is irrelevant, however, given the information above. The fact that none of the officers on the scene smelled mace when they

arrived on the scene does not undermine the employees' accusations that Ms. Doe had sprayed mace in the past.

Ms. Doe also contends that the Buffalo Wild Wings employees' accusations were not "credible information" based upon "the totality of the circumstances." (*See id.* at 5.) In support of this contention, she cites testimony from herself, Denardis, and Officer Smereczynsky. (*See id.* (citing ECF No. 53, Ex. A, Deposition of Jane Doe ("Doe Depo.") at 63-64 (stating that "[s]omeone sprayed mace" but denying that it was her); Denardis Depo. at 18-19 (noting that Denardis had stated that Tre Tavaris had accused Ms. Doe of spraying mace); ECF No. 53, Ex. D, Deposition of Joshua Officer Smereczynsky ("Smereczynsky Depo.") at 18-19 (stating that Denardis had told him that Ms. Doe "[m]aced us").) None of this testimony undermines the veracity of the Buffalo Wild Wings employees' accusations against Ms. Doe, let alone suggests that Officer Smereczynsky could not treat those accusations as "reasonably trustworthy information" demonstrating probable cause. *Martinez*, 202 F.3d at 634. As such, I conclude that Officer Smereczynsky's arrest of Ms. Doe was supported by probable cause.

The fact that Ms. Doe's arrest was supported by probable cause undermines her claim that Officer Smereczynsky's search of her person was unreasonable. "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The Supreme Court has held that "a search incident to arrest may only include 'the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Here, Officer Smereczynsky's search of Ms. Doe consisted only of the area within her immediate control. He found the knife in her purse, which "was hanging in the middle of [her] back, near her hands" (Def.'s L.R. 56(a)1 Stmt.

9

at ¶¶ 22, 24; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 22, 24) —an area clearly within her immediate control. Ms. Doe's sole argument challenging the validity of the search incident to her arrest is that the arrest was not supported by probable cause. (*See* ECF No. 56-8 at 5-6.) As noted earlier, this argument is meritless. Thus, Officer Smereczynsky's search of Ms. Doe did not violate her Fourth Amendment rights.

I therefore grant Officer Smereczynsky's motion for summary judgment with respect to Ms. Doe's unreasonable search and seizure and false arrest claims.

B. **Unreasonable Use of Force Claim**

While the Fourth Amendment "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," such force exceeds the constitutionally permissible degree if it is "objectively [un]reasonable in light of the facts and circumstances confronting the [officers making the arrest], without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Determining the "reasonableness" of a particular use of force "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (numerations added). The events "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 396-97).

Here, there is a genuine issue of material fact regarding whether Officer Smereczynsky's use of force against Ms. Doe was reasonable. As an initial matter, there is a genuine dispute of material fact regarding the third *Graham* factor, as the parties dispute whether Ms. Doe was actively resisting arrest when she was thrown to the ground. (*Compare* Def.'s L.R. 56(a)1 Stmt. at ¶ 26 (averring that Ms. Doe was still struggling shortly before Officer Smereczynsky threw her to the ground); Pl.'s L.R. 56(a)2 Stmt. at ¶ 26 (denying this accusation); *see also* ECF No. 56-1, Video Exhibit (a video of the encounter showing Ms. Doe pinned against an SUV before Officer Smereczynsky lifted her and swung her to the ground); Doe Depo. at 70 (A: "I was walking, and he just kept me and . . . saying, 'Start walking fast in front of me' . . . . [W]e got to a black truck, and he slammed my face to the window . . . . I was there for like a good two more minutes. And then that's when I got picked up and got slammed to the ground."); ECF No. 56-1, Video Exhibit.[2]) Given this dispute, the merits of Ms. Doe's excessive force claim against Officer Smereczynsky "'turns on which of two conflicting stories best captures what happened on the street,' making summary judgment inappropriate." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 763 (2d Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring in the judgment)) (internal citation omitted).

There is also a dispute concerning the second *Graham* factor—i.e., whether Ms. Doe presented an immediate threat to the safety of Officer Smereczynsky or others. Officer Smereczynsky claims that he feared he was about to lose control of Ms. Doe and that she would have access to the knife in her purse. (*See* ECF No. 53-1 at 13.) He also claims that there were no other officers in the vicinity at the time. (*See id.*) As noted above, however, Ms. Doe was

---

[2] The video appears to show Ms. Doe moving as she is pinned against the SUV, but it is unclear whether she was resisting Officer Smereczynsky or merely trying to maintain her footing (*See* ECF No. 56-1, Exhibit Video.)

handcuffed at the time—with her hands behind her back—and pinned against the SUV, with the front of her body against the vehicle. Further, I reviewed the video and was unable to see a purse or a knife. There is a genuine dispute of material fact concerning whether Ms. Doe could have presented a threat under these circumstances. Also, there is evidence in the record supporting a material dispute of fact concerning whether there were other officers in the area at the time. (*See* ECF No. 56-2, Ex 2, Deposition of Officer Hector Valentin at 11-12 (Q: "And so as you're walking up to that vehicle where [Ms. Doe] would be, you would be looking at the back of Officer [Smereczynsky]?" A: "That's correct." Q: "Okay. And to you, it looked like she was resisting?" A: "She was resisting." Q: "Okay. So eventually, you see him with her against the van?" A: "Correct." Q: "What happened?" A: Well, he was trying to . . . secure her. I then turned my attention to the crowd, because they were quickly approaching. I then turned back around, and she was already on the ground.").) Further, Officer Smereczynsky concedes that he did not see Ms. Doe make "a specific movement towards the knife." (*Id.* at 13.) Finally, Ms. Doe has submitted evidence that Officer Smereczynsky was four inches taller and thirty pounds heavier than she. (*See* ECF No. 56-5, Report of Thomas Chartoff at 6 (noting that Officer Smereczynsky had a "4 inch height and 30+ pound weight advantage[] over Doe").) These disputes of material fact preclude the award of summary judgment.

The defendant's invocation of the doctrine of qualified immunity does not change this conclusion. (*See* ECF No. 53-1 at 20 (invoking defense of qualified immunity with respect to unreasonable use of force claim).) "The doctrine of '[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Rogoz*, 796 F.3d at 247 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Officials are "entitled to qualified

immunity [when] their decision was reasonable, even if mistaken; the doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. . . ." *Id.* (internal quotation marks and citations omitted). "[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Officer Smereczynsky contends that he "reacted in accordance with his training, based on the circumstances at hand, which included a non-compliant, resistant arrestee's hands being in close proximity to a deadly weapon." (ECF No. 53-1 at 21.) While this statement may or may not be true, it relies on Officer Smereczynsky's version of events. It thus has no bearing on the matter at issue here, which is whether the evidence, *viewed in the light most favorable to the plaintiff*, shows a violation of a clearly established right. And the evidence plainly does make such a showing. Crediting the plaintiff's account and drawing all reasonable inferences in her favor, a reasonable juror could find as follows: (1) once she was handcuffed inside the restaurant, she was no longer resisting, (2) her hands were cuffed behind her back and she had no realistic means of accessing a knife inside her purse, (3) she was marched out to a SUV and then her face was "slammed to the window" with her hands cuffed behind her back, and (4) while trying to maintain her footing as her face was "smooshed to the window . . . by his arm" (Doe Depo. at 72), she was then lifted into the air and thrown down hard against the snowy curb by Officer Smereczynsky, who was four inches taller and thirty pounds heavier. Under that set of facts, Officer Smereczynsky would have violated Doe's clearly established constitutional rights—or at

13

the very least, a reasonable jury could so find. Thus, the question of qualified immunity folds into the overall factual dispute between the parties, thereby negating the possibility of summary judgment. *See Rogoz*, 796 F.3d at 250 (defendants not entitled to summary judgment on ground of qualified immunity on basis of disputed record).

I therefore deny Officer Smereczynsky's motion for summary judgment with respect to Ms. Doe's excessive force claim.

### C. Deprivation of Liberty to Pursue Occupation Claim

"While [a] person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest, courts in the Second Circuit have consistently held one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest." *Toussie v. Cty. of Suffolk*, 806 F. Supp. 2d 558, 579 (E.D.N.Y. 2011) (internal citations and quotation marks omitted); *Schultz v. Inc. Vill. of Bellport*, No. 08-CV-0930-JFB-ETB, 2010 WL 3924751, at *7 (E.D.N.Y. Sept. 30, 2010) ("Case law indicates . . . that a substantive due process claim based on infringement of [a liberty interest in pursuing an occupation] or similar rights will succeed only where a person is blocked from participating in a particular field." (citing *Conn. v. Gabbert*, 526 U.S. 286, 291-92 (1999))). Ms. Doe has failed to demonstrate that Officer Smereczynsky's actions have prevented her from pursuing her chosen occupation. She contends that she has "a scar above her eye from the injury sustained," a nagging shoulder injury that still bothers her, and "trouble sleeping and . . . nightmares about the police." (ECF No. 56-8 at 9.) She fails to establish how any of these factors will completely prevent her from performing her chosen occupation. Indeed, Ms. Doe has failed to specify her chosen occupation and has represented that she is not currently interested in attaining employment. (*See* Doe Depo. at 44 (Q: "Have you ever had a job anywhere?" A: "No." Q:

14

"You're old enough to work now. Do you have any thoughts about getting a summer job?" A: "No.").) As such, her claim for deprivation of liberty to pursue her occupation fails as a matter of law.

### D. Equal Protection Claim

A plaintiff may set out an equal protection claim by averring that, "(1) compared with others similarly situated, plaintiff was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Washpon v. Parr*, 561 F. Supp. 2d 394, 409 (S.D.N.Y. 2008) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 2004))). He or she may also allege a "class of one" claim, "where the plaintiff alleges that [he or she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Ms. Doe does not elaborate on which type of equal protection claim she seeks to bring. In fact, she does not elaborate upon her equal protection claim whatsoever and does not respond to the defendant's motion for summary judgment challenging it. This alone provides justification to determine her claim fails as a matter of law. *See Tagliatela v. Metro-N. Commuter R. Co.*, No. 310-CV-1755 VLB, 2012 WL 5493618, at *7 (D. Conn. Nov. 13, 2012) ("It is well established that '[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))). In any event, since Ms. Doe fails to allege that she was treated differently from others similarly situated or that her treatment was the result of an irrational or

impermissible consideration, her claim fails as a matter of law. *See Washpon*, 561 F. Supp. 2d at 409 (dismissing plaintiff's equal protection claim on basis that she had "not sufficiently alleged that she was treated differently, let alone that such treatment was the product of impermissible considerations").

  E. **Intentional Infliction of Emotional Distress Claim**

To set out a claim for intentional infliction of emotional distress,[3] a plaintiff must prove the following elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000). Officer Smereczynsky contends that since his "actions were proper under the Fourth Amendment . . ., his actions cannot, as a matter of law, be 'extreme and outrageous.'" (ECF No. 53-1 at 24.) He also contends that he is subject to qualified immunity. (*Id.* at 24.) These arguments fail because, given the findings a reasonable jury could make if it credited the plaintiff's evidence (as recounted above) and given the fact that the plaintiff was a minor and a large crowd of her peers was present when she was thrown against the curb (*see* ECF No. 56-1, Video Exhibit), a reasonable juror could also conclude that Officer Smereczynsky's conduct was outrageous and that he should have known that emotional distress was the likely result of such conduct. *See Clark v. Dowty*, No. 3:05-CV-1345 WWE, 2007 WL 2022045, at *14 (D. Conn. July 9, 2007) (concluding that "[b]ecause the Court has

---

  [3] I construe Ms. Doe's claim as solely alleging "intentional infliction of emotional distress" for two reasons. First, I am unaware of any Connecticut case law supporting a tort for "intentional humiliation." Second, Ms. Doe styles her claim in her objection as an intentional infliction of emotional distress claim. (*See* ECF No. 56-8 at 12.)

16

found that material issues of fact exist regarding plaintiff's claim of excessive force, summary judgment is improper as to plaintiff's claim of intentional infliction of emotional distress"); *Betancourt v. Slavin*, 676 F. Supp. 2d 71, 81 (D. Conn. 2009) ("Because summary judgment was denied in plaintiff's excessive force claim, the Court cannot grant summary judgment on the intentional infliction of emotional distress claim."); *Brown v. Catania*, No. 3:06CV73PCD, 2007 WL 879081, at *10 (D. Conn. Mar. 21, 2007) ("Because the Court has found material issues of fact with regard to Plaintiff's excessive force claim, summary judgment is also improper on Plaintiff's intentional infliction of emotional distress claim.").

Officer Smereczynsky cites the Connecticut Supreme Court's decision in *Brooks v. Sweeney*, 299 Conn. 196, 209 (2010) in support of the proposition that "an arresting officer is entitled to judgment as a matter of law on . . . claims of intentional infliction of emotional distress" predicated upon arrests "supported by probable cause . . . ." (*See* ECF No. 53-1 at 24 (citing *Brooks*, 299 Conn. at 209.)) *Brooks* does not support such a sweeping statement. *Brooks* addressed, in relevant part, a "plaintiff's claim that [a] trial court improperly granted [the defendant's] motion for summary judgment on [an] . . . intentional . . . infliction of emotional distress claim[] on the ground that [the defendant's] affidavit [supporting a warrant for the plaintiff's arrest] was supported by probable cause." *Brooks*, 299 Conn. at 209-10. The *Brooks* court noted, however, that the plaintiff did not challenge the trial court's conclusion that the existence of probable cause would defeat the plaintiff's claim for intentional infliction of emotional distress relating to the defendant's affidavit. *See id.* at 210 n. 14 ("We note that the plaintiff does not challenge the trial court's determination that the existence of probable cause defeats her claim[] of . . . intentional . . . infliction of emotional distress. We therefore limit our analysis to whether the trial court properly determined that probable cause existed for the

17

plaintiff's arrest."). *Brooks* therefore does not help Officer Smereczynsky's cause. Further, even if *Brooks* could be read as broadly as the defendant urges, it would not help him. As explained above, I am permitting the intentional infliction of emotional distress claim to proceed based on essentially the same facts that support the excessive force claim. Even when an arrest is lawful, the force used to effectuate it may be found unlawful. *See, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("[A] lawful arrest for resisting arrest may be accompanied by excessive force . . . ." (internal quotation marks omitted)). It thus does not matter that the arrest here was "supported by probable cause." (ECF No. 53-1 at 24.)

I therefore deny Officer Smereczynsky's motion for summary judgment with respect to Ms. Doe's intentional infliction of emotional distress claim.

## V. Conclusion

For the reasons set forth above, Officer Smereczynsky's motion for summary judgment (ECF No. 53) is granted in part and denied in part. The motion is denied with respect to Ms. Doe's excessive force and intentional infliction of emotional distress claims. It is granted with respect to all of Ms. Doe's other claims. As noted in the Court's scheduling order (ECF No. 24), the parties' joint trial memorandum will be due **thirty (30) days** from the date of this ruling. Further, jury selection in this case is scheduled for December 5th, 2018 at 9:00 A.M; the pretrial conference is scheduled for November 19, 2018, at 2:00 P.M.; and a telephonic status conference is scheduled in this case for Monday, October 29th, 2018 at 3:30 P.M. Finally, should the parties wish to proceed to mediation, they should file **within fourteen (14) days** the joint statement described at the undersigned's page of the Court's website.

IT IS SO ORDERED.

                                                      /s/_____
                                        Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                September 6, 2018